[No. H032845. Sixth Dist. July 9, 2010.]

MOLECULAR ANALYTICAL SYSTEMS, Plaintiff and Respondent, v. CIPHERGEN BIOSYSTEMS, INC., et al., Defendants and Appellants.

698

700

---

**COUNSEL**

Quinn Emanuel Urquhart Oliver & Hedges, Melissa J. Baily and David Ruderman for Defendants and Appellants.

Ruby & Schofield and Steven A. Ellenberg for Plaintiff and Respondent.

OPINION

**McADAMS, J.**—This is an appeal from an order denying defendants' motion to compel arbitration. Applying the law to the undisputed facts and exercising our independent judgment, we reverse the trial court's ruling. As we explain below, plaintiff cannot avoid arbitrating its claims against the signatory defendant, because those claims are within the reach of the arbitration clause. And plaintiff cannot avoid arbitrating its claims against the nonsignatory defendant, because those claims are inextricably bound up with the obligations arising out of the agreement containing the arbitration clause.

## BACKGROUND

The parties to this action are Molecular Analytical Systems (plaintiff or MAS) and Ciphergen Biosystems, Inc., and Bio-Rad Laboratories, Inc. (defendants).

### The Contracts

Plaintiff is in a contractual relationship with defendant Ciphergen, arising from various contracts, including two that are at issue here: a "License Agreement" and a "Settlement Agreement," both executed in 2003 following settlement of prior litigation. Plaintiff has no express contractual relationship with defendant Bio-Rad.

Both of the agreements at issue here contain arbitration provisions. Section 13.1 of the Settlement Agreement requires arbitration of "any dispute concerning the interpretation or enforcement of the terms of" that agreement, the License Agreement, and other specified contracts. That requirement is qualified by Section 13.4 of the Settlement Agreement, which states: "Except as expressly set forth in Section 13.1, no dispute between the Parties need be submitted for binding arbitration, regardless of whether or not such dispute may arise out of or otherwise relate to" that agreement, the License Agreement, or the other specified contracts. The License Agreement incorporates those arbitration provisions by reference.

### Plaintiff's Complaint

In July 2007, plaintiff filed its complaint in this matter.

The complaint includes the following factual allegations: Plaintiff licensed certain technology rights to defendant Ciphergen in exchange for the payment

of royalties on total adjusted revenue, all as provided in the License Agreement, which is attached to the complaint as exhibit A. In 2006, "Ciphergen in substance assigned its rights under the License Agreement to Bio-Rad." Ciphergen failed to secure plaintiff's written consent to the assignment, as required by the License Agreement. "Ciphergen received $20 million in cash" from that transaction with Bio-Rad, which "constitutes revenue under the License Agreement." But Ciphergen failed to pay royalties on that revenue. Plaintiff "has never entered into a commercial license agreement with Bio-Rad." Nevertheless, in February 2007, plaintiff received a letter from Bio-Rad with a royalty check that did "not appear to be calculated upon Bio-Rad's Adjusted Total Revenue as required by the License Agreement."

The complaint contains nine causes of action, the first four naming Ciphergen, the next four naming Bio-Rad, and the last one naming both defendants. The four claims against Ciphergen alone are for breach of contract (first cause of action), breach of the implied covenant of good faith and fair dealing (second cause of action), fraud (third cause of action), and accounting (fourth cause of action). As against Bio-Rad, plaintiff asserts claims for interference with contract (fifth cause of action) and conversion (sixth cause of action). Alternatively, plaintiff posits the License Agreement as a contract between plaintiff and Bio-Rad, which Bio-Rad breached, thereby entitling plaintiff to an accounting (seventh and eighth causes of action). Finally, against both defendants, plaintiff seeks a declaration of contractual rights (ninth cause of action).

### Defendants' Motion to Compel Arbitration

In November 2007, both defendants moved for an order staying the court action and compelling arbitration.

In their memorandum of points and authorities in support of the motion, defendants sought arbitration of plaintiff's claims against Ciphergen, asserting that they all fall within the scope of the arbitration provision. Defendants further argued that plaintiff's "parallel claims against Bio-Rad must also be submitted to arbitration" based on the doctrine of equitable estoppel.

As evidentiary support for their motion, defendants submitted a copy of the Settlement Agreement, attached as an exhibit to the declaration of Ciphergen employee Eric Fung.

Plaintiff opposed the motion, expressing disagreement with all of defendants' arguments.[1] Plaintiff disputed the scope of the arbitration clause, arguing against arbitration of any of its tort or equity claims against either defendant. Additionally, plaintiff cited the lack of "any arbitration agreement with Bio-Rad" as a basis for refusing arbitration with both defendants, arguing first that plaintiff could not be compelled to arbitrate with Bio-Rad, because Bio-Rad is a nonsignatory, and further that plaintiff should not be compelled to arbitrate with Ciphergen, because of "the potential for conflicting results if MAS is compelled to arbitrate with Ciphergen." (See Code Civ. Proc., § 1281.2, subd. (c).)[2]

In December 2007, the court conducted a hearing on the motion. At defense counsel's request, the court allowed posthearing supplemental briefing with submission thereafter.

In February 2008, the court issued its order denying defendants' motion to compel arbitration. The order contains no explanation of the basis for the court's ruling. Defendants thereafter requested a statement of decision, which the court denied as untimely. (See §§ 632, 1291.)

*Appeal*

Defendants brought this appeal.

In their opening brief, defendants make these arguments: all of plaintiff's claims are within the scope of the arbitration agreement; Bio-Rad may enforce the arbitration clause; and section 1281.2(c) does not apply to this case.

In its respondent's brief, plaintiff interposes these counterarguments: many of its claims are not subject to arbitration; defendants failed to show that Bio-Rad was a party to an arbitration agreement; nothing in the record supports application of the equitable estoppel doctrine; and section 1281.2(c) precludes arbitration.

In reply, defendants dispute all of plaintiff's arguments.

---

[1] One point of disagreement was whether the court should apply California arbitration law, as plaintiff urged, or federal law, as defendants argued. That point does not concern us, because defendants have not renewed their argument for federal law in this court.

[2] That provision permits the court to deny arbitration where a "party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) We refer to that provision hereafter as section 1281.2(c).

Unspecified statutory references are to the Code of Civil Procedure.

## DISCUSSION

To establish the proper framework for our discussion, we first summarize the legal principles that inform our analysis. We then apply them to this case.

### I. *Legal Principles*

#### A. *Overview*

■ "The purpose of arbitration is to have a simple, quick and efficient method to resolve controversies." (*New Linen Supply v. Eastern Environmental Controls, Inc.* (1979) 96 Cal.App.3d 810, 818 [158 Cal.Rptr. 251].) For this reason, there is a strong public policy favoring contractual arbitration. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342 [79 Cal.Rptr.2d 308, 965 P.2d 1178] (*Mercury*).) But that policy " ' "does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration." ' " (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763 [28 Cal.Rptr.3d 752] (*Westra*).)

#### B. *Compelling Contractual Arbitration*

##### 1. *Statutory Mandate and Exception*

■ Section 1281.2 requires the court to order contractual arbitration in a proper case. It provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ," unless enumerated exceptions apply.

■ One relevant exception is contained in section 1281.2(c). "Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [25 Cal.Rptr.3d 540, 107 P.3d 217] (*Cronus*).) "It is an evenhanded law that allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds *or* stay the lawsuit while arbitration proceeds to avoid conflicting rulings on common issues of fact and law amongst interrelated parties." (*Ibid.*) Under this provision, contractual arbitration "may have to yield if there is an issue of law or fact common to the arbitration and a pending action or proceeding with a third party and there is a possibility of

conflicting rulings thereon." (*Mercury, supra,* 19 Cal.4th at p. 348.) Application of section 1281.2(c) is discretionary with the trial court. (*Cronus,* at p. 393.)

### 2. *Scope of Arbitration*

■ "The scope of arbitration is a matter of agreement between the parties." (*Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227, 230 [90 Cal.Rptr.2d 195] (*Larkin*).) "A party can be compelled to arbitrate only those issues it has agreed to arbitrate." (*Ibid.*) Thus, "the terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested." (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1063 [54 Cal.Rptr.3d 837].) For that reason, "the contractual terms themselves must be carefully examined before the parties to the contract can be ordered to arbitration" by the court. (*Ibid.*)

"However, doubts as to the scope of an agreement to arbitrate are to be resolved in favor of arbitration." (*Larkin, supra,* 76 Cal.App.4th at p. 230; see also, e.g., *Cronus, supra,* 35 Cal.4th at p. 386 [applying federal law]; *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1190 [33 Cal.Rptr.2d 188] (*Vianna*) [same result under Cal. law].) As a corollary, "an exclusionary clause in an arbitration provision should be narrowly construed." (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 771 [49 Cal.Rptr.3d 531] (*Gravillis*).)

■ The party opposing arbitration has the burden of showing that the agreement, as properly interpreted, does not apply to the dispute. (*Gravillis, supra,* 143 Cal.App.4th at p. 772; *Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406 [18 Cal.Rptr.3d 215] (*Buckhorn*).)

### 3. *Procedure*

■ The statutory provisions governing contractual arbitration "create a summary proceeding for resolving" petitions or motions to compel arbitration. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Ibid.*) To satisfy the moving party's initial burden, the petition or motion must be "accompanied by prima facie evidence of a written agreement to arbitrate the controversy" in question. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) In ruling on the petition or motion, "the court must determine whether the parties entered

into an enforceable agreement to arbitrate that reaches the dispute in question, construing the agreement to the limited extent necessary to make this determination." (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204–205 [47 Cal.Rptr.3d 717].)

## C. *Arbitration with Nonsignatories*

■ "Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it." (*Westra, supra,* 129 Cal.App.4th at p. 763; see *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1284 [63 Cal.Rptr.3d 787].) "There are exceptions to the general rule that a nonsignatory to an agreement cannot be compelled to arbitrate and cannot invoke an agreement to arbitrate, without being a party to the arbitration agreement." (*Westra,* at p. 765; see *Rowe v. Exline,* at p. 1284.)

One pertinent exception is based on the doctrine of equitable estoppel. (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 268 [25 Cal.Rptr.3d 440] (*Boucher*); *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220 [92 Cal.Rptr.3d 534] (*Goldman*); see generally Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2009) ¶¶ 5:266.10 to 5:266.25, pp. 5-189 to 5-192 (rev. # 1, 2009).) Under that doctrine, as applied in "both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." (*Boucher,* at p. 271; see *Goldman,* at pp. 217–218.) "By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." (*Boucher,* at p. 272; see *Goldman,* at p. 220.) "The rule applies to prevent parties from trifling with their contractual obligations." (*Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 833 [44 Cal.Rptr.3d 817] (*Turtle Ridge*).)

Where the equitable estoppel doctrine applies, the nonsignatory has a right to enforce the arbitration agreement. (*Rowe v. Exline, supra,* 153 Cal.App.4th at p. 1290.) In such cases, the nonsignatory is not a "third party" within the meaning of section 1281.2(c), and that provision simply does not apply. (*Rowe v. Exline,* at p. 1290.)

## II. *Analysis*

With those principles in mind, we address defendants' contentions that plaintiff's claims against Ciphergen all fall within the scope of the arbitration

agreement, and that Bio-Rad may enforce the arbitration clause, with the result that section 1281.2(c) does not apply to this case. Before turning to the substance of those issues, we first discuss the applicable standard of review, which the parties dispute.

## A. *Appellate Review*

Defendants urge de novo review, on the ground that no extrinsic evidence was admitted concerning the License Agreement. Plaintiff disagrees, arguing for more deferential review. To the extent that the appeal concerns application of the equitable estoppel doctrine, plaintiff urges substantial evidence review, given the factual nature of that inquiry. To the extent that the appeal concerns application of section 1281.2(c), plaintiff urges review for an abuse of discretion. In reply, defendants acknowledge that a ruling under section 1281.2(c) "is reviewed for an abuse of discretion," but they argue that "that issue should not be reached in this case."

As we now explain, we agree with defendants that the issues presented here are all subject to our de novo review.

### 1. *De novo review is proper because there is no conflicting evidence concerning arbitrability.*

When "the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to de novo review." (*Gravillis, supra,* 143 Cal.App.4th at p. 771.) Thus, in cases where "no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration." (*California Correctional Peace Officers Assn. v. State of California, supra,* 142 Cal.App.4th at p. 204.)

This principle finds expression in many cases. (See, e.g., *Bono v. David, supra,* 147 Cal.App.4th at pp. 1061–1062; *Turtle Ridge, supra,* 140 Cal.App.4th at p. 833; *Boucher, supra,* 127 Cal.App.4th at p. 267; *Buckhorn, supra,* 121 Cal.App.4th at p. 1406; *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1716 [1 Cal.Rptr.3d 328] (*Metalclad*); *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71–72 [100 Cal.Rptr.2d 683]; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684 [99 Cal.Rptr.2d 809]; *Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214 [96 Cal.Rptr.2d 168]; *Larkin, supra,* 76 Cal.App.4th at p. 229; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670 [53 Cal.Rptr.2d 515]; *Vianna, supra,* 27 Cal.App.4th at p. 1189; *Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 217 [181 Cal.Rptr. 530].)

The de novo review standard likewise applies to the question of Bio-Rad's rights to compel arbitration. "Whether and to what extent [nonsignatories] can also enforce the arbitration clause is a question of law, which we review de novo." (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1283.)

In this case, since no conflicting evidence concerning arbitrability with any party was presented, de novo review is proper.

### 2. *No disputed factual issues are presented here.*

As case law recognizes, when "the trial court's decision on arbitrability is based upon resolution of disputed facts, we review the decision for substantial evidence." (*NORCAL Mutual Ins. Co. v. Newton, supra*, 84 Cal.App.4th at p. 71.) But that rule does not apply when issues presented "as factual questions are actually legal ones." (*Ibid.*)

Here, the facts bearing on the trial court's decision derive solely from the language of plaintiff's complaint and from the terms of the License Agreement, neither of which is in dispute. For that reason, the doctrine of implied factual findings does not come into play. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Agri-Systems, Inc. v. Foster Poultry Farms* (2008) 168 Cal.App.4th 1128, 1134–1135 [85 Cal.Rptr.3d 917]; *Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 129 [285 Cal.Rptr. 586].)

Nor does the consideration of equitable estoppel principles change the review standard in this case. "Although equitable estoppel is generally a question of fact, it is a question of law when the facts are undisputed and only one reasonable conclusion can be drawn from them." (*Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 840 [84 Cal.Rptr.3d 452] [question of whether plaintiffs "should be estopped to contest the Commission's jurisdiction" was subject to de novo review].) In this case, "the parties do not dispute the facts but rather whether those facts constitute sufficient legal basis for equitable estoppel." (*Metalclad, supra*, 109 Cal.App.4th at p. 1716.) Since application of the equitable estoppel doctrine here depends entirely on the allegations of the complaint, that aspect of the case presents questions of law for our independent review.

### 3. *This case does not involve any discretionary rulings.*

When the trial court makes a discretionary decision under section 1281.2(c), the reviewing court will affirm unless an abuse of discretion is shown. (*Mercury, supra*, 19 Cal.4th at p. 349.) But that deferential review standard does not apply unless a discretionary ruling was made under section 1281.2(c).

"The court's discretion under section 1281.2, subdivision (c) does not come into play until it is ascertained that the subdivision applies, which requires the threshold determination of whether there are nonarbitrable claims against at least one of the parties to the litigation (e.g., a nonsignatory)." (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1288, fn. 6.) When a nonsignatory has the right to enforce an arbitration agreement based on application of the equitable estoppel doctrine, section 1281.2(c) does not come into play. (*Rowe v. Exline*, at p. 1290.) In such cases, the reviewing court "need not determine whether the trial court's selection among the alternative dispositions offered by the subdivision was an abuse of discretion." (*Ibid.*) As we explain below, that is the case here.

Having determined that de novo review is proper, we now turn to the substantive issues raised by defendants, beginning with those involving Ciphergen.

### B. Plaintiff's Claims Against Ciphergen

#### 1. Defendants provided a sufficient evidentiary predicate for their motion to compel arbitration.

At the outset, plaintiff challenges the foundation for defendants' motion to compel arbitration. As noted above, a party seeking arbitration must provide "prima facie evidence of a written agreement to arbitrate the controversy" in question. (*Rosenthal v. Great Western Fin. Securities Corp., supra*, 14 Cal.4th at p. 413.) According to plaintiff, defendants never alleged facts "support[ing] the existence of an agreement to arbitrate" the disputed issues, and they never "provided any evidence supporting any claim" that Bio-Rad is a party to an arbitration agreement. In plaintiff's view, defendants cannot rely on the allegations of the complaint to carry their initial burden, first because defendants "actually deny all of MAS' claims including presumably, its alternative allegation that Bio-Rad succeeded to Ciphergen's assets" and also because the "mixed factual-legal allegations" of the complaint on which defendants rely "cannot be used as evidentiary admissions."

In positing defendants' denial of its claims as a basis for refusing arbitration, plaintiff relies on *Brodke v. Alphatec Spine Inc.* (2008) 160 Cal.App.4th 1569 [73 Cal.Rptr.3d 554] (*Brodke*). As the *Brodke* court observed: "In seeking enforcement of the contract, defendants have the burden under section 1281.2 to allege the existence of a written agreement to arbitrate. Their petition serves the function of a complaint for specific performance. [Citation.] Absent an allegation of the existence of an agreement to arbitrate, the petition fails to state a cause of action for specific performance." (*Id.* at p. 1575; see also *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219–1220 [101

Cal.Rptr.3d 97].) Distinguishing between pleading and proof of the agreement to arbitrate, *Brodke* held: "Defendants cannot rely on the allegations in the complaint to meet their pleading burden. While plaintiffs' admissions are an appropriate means by which the existence of an agreement may be *proved*, there is simply no reason to prove anything until the moving party alleges the existence of that which is to be proved." (*Brodke*, at p. 1575.) In *Brodke*, "defendants did not affirmatively allege the existence of a written agreement to arbitrate. They did the opposite. They 'contest[ed] the existence or validity of any such agreements' with plaintiffs. Thus, defendants failed to satisfy the most basic statutory prerequisite to granting the petition—to allege the existence of a written agreement to arbitrate." (*Id.* at p. 1574.) The *Brodke* court rejected the notion "that a party petitioning to enforce an arbitration clause may simultaneously deny the existence of the very contract sought to be enforced." (*Id.* at p. 1575.) And it discerned no public policy reason to "compel the enforcement of a contract on behalf of a party who denies the very existence of the contract sought to be enforced." (*Id.* at p. 1577.)

Plaintiff's reliance on *Brodke* is misplaced. The facts here are entirely dissimilar. In contrast to *Brodke*, defendants here are not disputing the existence of the agreement alleged in the complaint. (Cf. *Brodke, supra*, 160 Cal.App.4th at p. 1576 ["defendants contested the existence of 'any' written agreements with plaintiffs . . ."].) To the contrary, defendants affirmatively asserted the existence of the License Agreement in their moving papers. Moreover, defendants made a positive showing that an agreement to arbitrate exists, by submitting a copy of the Settlement Agreement as an exhibit to Fung's declaration. (Cf. *Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569–570 [73 Cal.Rptr.3d 17] [where the defendant seeking arbitration "did not produce a copy of" the documents claimed to incorporate the arbitration clause, it "failed to prove the existence of an arbitration contract" binding the plaintiffs].)

■ In this case, defendants made a sufficient prima facie showing of an agreement to arbitrate, based not only on the allegations of the complaint but also on their moving papers and on their proffer of the Settlement Agreement. "A plain reading of the statute indicates that as a preliminary matter the court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity." (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219 [105 Cal.Rptr.2d 597].) In this case, defendants carried their initial burden of showing an agreement to arbitrate.

### 2. The arbitration agreement covers plaintiff's claims against Ciphergen.

Here, plaintiff and Ciphergen agreed to arbitrate "any dispute concerning the interpretation or enforcement of the terms of" the Settlement Agreement, the License Agreement, and other specified contracts, but not any other disputes.[3]

Plaintiff concedes the arbitrability of two of its five claims against Ciphergen, for breach of contract and declaratory relief, asserted in the first and ninth causes of action of the complaint. In the trial court, plaintiff argued: "The second, third and fourth causes of action against Ciphergen do not seek to interpret or enforce the License Agreement." In this court, without identifying particular causes of action, plaintiff states that it "did not consent to arbitrate its tort or equity claims against either" Ciphergen or Bio-Rad. Based on these statements, we assume that plaintiff disputes the arbitrability of these claims against Ciphergen: (a) the second cause of action, for breach of the implied covenant of good faith and fair dealing; (b) the third cause of action, for fraud; and (c) the fourth cause of action, for an accounting.

As we now explain, each falls within the scope of the arbitration clause.

### a. Breach of the implied covenant of good faith and fair dealing

■ "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."

---

[3] The License Agreement provides for dispute resolution in section 10.1 as follows: "Article 13 of the Settlement Agreement is incorporated herein by reference."

Article 13 of the Settlement Agreement is captioned "DISPUTE RESOLUTION." Two of its provisions are pertinent here, sections 13.1 and 13.4.

Section 13.1 states in full as follows: "Except as otherwise expressly provided in Section 13.4 herein, any dispute concerning the interpretation or enforcement of the terms of this Settlement Agreement, the Assignment Agreement, the Exclusive License Agreement and the Stock Purchase Agreement shall be submitted for binding arbitration before the Judicial Arbitration and Mediation Service ('JAMS') in San Francisco, or San Jose, California, provided, however, that a Party initiating such arbitration shall first give written notice of the alleged dispute by facsimile and overnight mail, and shall allow forty-five (45) calendar days time thereafter to resolve such dispute before commencing arbitration."

Section 13.4 states: "Except as expressly set forth in Section 13.1, no dispute between the Parties need be submitted for binding arbitration, regardless of whether or not such dispute may arise out of or otherwise relate to this Settlement Agreement, the Assignment Agreement, the Exclusive License Agreement, or the Stock Purchase Agreement. Without limiting the foregoing, it is understood that (i) no claim for patent infringement, and (ii) no Party's assertion of this Settlement Agreement as provided in Article 12 above [titled 'AGREEMENT AS DEFENSE OR BAR'], need be submitted, in any circumstances, to binding arbitration."

(*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49 [275 Cal.Rptr. 17].) The covenant does not exist independently of the underlying contract. (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1033 [90 Cal.Rptr.3d 453].) "Generally, the implied covenant operates to protect the express covenants or promises of the contract." (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 806 [71 Cal.Rptr.3d 885].) "The precise nature and extent of the duties imposed under the implied covenant thus depend upon the purposes of the contract." (*Ibid.*)

In this case, the factual basis for plaintiff's claim of breach of the implied covenant is its allegation that Ciphergen deceived plaintiff about the nature of Ciphergen's transaction with Bio-Rad, in order "to facilitate its assignment of rights under the License Agreement" without first obtaining plaintiff's consent and without paying royalties on the payment received from Bio-Rad. Apart from the allegations of deception, this cause of action rests on the same basis as plaintiff's claim for breach of contract, which alleges assignment without consent and failure to make the required royalty payment.

Plaintiff's claim falls within the arbitration clause, which requires arbitration of "any dispute concerning the interpretation or enforcement" of specified agreements, including the License Agreement. Similarly worded arbitration clauses have been held to subsume claims for breach of the covenant of good faith and fair dealing. For example, an arbitration clause covering "any dispute of any kind whatsoever, regarding the meaning, interpretation or enforcement of the provisions of this Agreement" was applied to a claim for breach of covenant in *Vianna, supra*, 27 Cal.App.4th 1186, 1188. As the court explained there, given the strong policy favoring arbitration, plaintiff's agreement "to arbitrate 'any dispute' regarding 'enforcement' of the provisions of the contract plainly covers [a] claim for breach of the covenant of good faith and fair dealing." (*Id.* at p. 1189; see also, e.g., *Boucher, supra*, 127 Cal.App.4th at p. 272.)

### b. *Fraud*

As settled case law recognizes, "a complaint sounding in tort will not in itself prevent arbitration if the underlying agreement embraces the disputed matter." (*Merrick v. Writers Guild of America, West, Inc., supra*, 130 Cal.App.3d at p. 219.) "A long line of California and federal cases holds that claims framed in tort are subject to contractual arbitration provisions when they arise out of the contractual relationship between the parties." (*Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418, fn. 12 [220 Cal.Rptr. 807, 709 P.2d 826]; see also, e.g., *Coast Plaza Doctors Hospital v. Blue Cross of California, supra*, 83 Cal.App.4th at p. 686; *Metalclad, supra*, 109

Cal.App.4th at pp. 1717–1718; *Buckhorn, supra*, 121 Cal.App.4th at p. 1408; *Boucher, supra*, 127 Cal.App.4th at p. 272; cf. *Bono v. David, supra*, 147 Cal.App.4th at p. 1069 [defamation claim not encompassed by arbitration clause]; *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 684 [33 Cal.Rptr.3d 853] [same; defamation claim "no more concerns the terms of the agreement, than would a punch in the nose during a dispute over a medical billing"].)

Here, the complaint alleges: "Ciphergen has repeatedly represented to MAS that it was, and is, complying with the License Agreement with regard to the payment of royalties and its other terms, including the prohibition against assigning rights under the License Agreement without MAS' consent." The complaint further alleges: "These representations have been false. [¶] Ciphergen has also failed to disclose to MAS the true facts behind its transaction with Bio-Rad . . . and instead has actively tried to conceal the true economic nature of the deal as it affects the License Agreement." The complaint also alleges justifiable reliance and resulting damages.

Patently, these fraud claims "arise out of the contractual relationship between the parties." (*Dryer v. Los Angeles Rams, supra*, 40 Cal.3d at p. 418, fn. 12; see also, e.g., *Metalclad, supra*, 109 Cal.App.4th at p. 1718; *Turtle Ridge, supra*, 140 Cal.App.4th at p. 834.) A similarly worded arbitration clause was applied to the plaintiff's tort claims, including fraud in the inducement, in *Buckhorn, supra*, 121 Cal.App.4th 1401. The arbitration clause there covered disputes " 'concerning the enforcement or the interpretation' " of the parties' agreement. (*Id.* at p. 1404, fn. 1.) As the *Buckhorn* court stated: "The issue turns on whether the tort claims are 'rooted' in the contractual relationship between the parties, not when they occurred." (*Id.* at p. 1407.) Here, too, despite being framed in tort, plaintiff's fraud cause of action is subject to the contractual arbitration provisions.

###### c. *Accounting*

Plaintiff seeks to avoid arbitration of its accounting claim on the ground that this cause of action sounds in equity. In support of that argument, plaintiff cites case law holding that an action for an accounting "is a suit in equity." (*St. James Church v. Superior Court* (1955) 135 Cal.App.2d 352, 359 [287 P.2d 387].)

Regardless of its equitable nature, an action for accounting may arise out of a contract. (*McClain v. Octagon Plaza, LLC, supra*, 159 Cal.App.4th at pp. 805–808 [under lease terms and implied covenant, tenant entitled to limited accounting]; *Larkin, supra*, 76 Cal.App.4th at p. 230 ["complaint for dissolution and an accounting clearly arises out of and relates to the

partnership agreement"].) Such a claim may be arbitrable. (*Larkin*, at p. 230; *Buckhorn, supra*, 121 Cal.App.4th at pp. 1404, 1408.)

In this case, the complaint alleges: "Under the License Agreement, Ciphergen has an obligation . . . to provide periodic statements of [an] account of all revenues generated, and to pay over to MAS a percentage of that revenue." Without question, this cause of action concerns " 'the enforcement or the interpretation' " of the License Agreement, as contemplated by the arbitration clause. (*Buckhorn, supra*, 121 Cal.App.4th at p. 1404, fn. 1 [agreement to arbitrate disputes " 'concerning the enforcement or the interpretation' " of the contract covered accounting claim]; see *id.* at p. 1408.) "The controversy as alleged would not have arisen at all but for the . . . agreement." (*Larkin, supra*, 76 Cal.App.4th at p. 230.) The accounting claim therefore falls within the arbitration clause.

Having concluded that all of plaintiff's claims against Ciphergen are arbitrable, we now consider plaintiff's claims against Bio-Rad. As we explain, those claims likewise are subject to arbitration.

### C. *Claims Against Bio-Rad*

#### 1. *Plaintiff is equitably estopped from refusing to arbitrate with Bio-Rad.*

Under the doctrine of equitable estoppel, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." (*Goldman, supra*, 173 Cal.App.4th at p. 220.) Though its use in this context developed under federal arbitration law, the doctrine applies with equal force under California law. "Merely because a legal concept emanates from federal jurisprudence does not necessarily make it unreasonable, inapplicable, or unpersuasive in a California case." (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1288.) To the contrary, there are solid reasons for applying these equitable estoppel principles to arbitrations governed by California law. For one thing, "both federal and California arbitration law favor the arbitration of disputes." (*Ibid.*; see also, e.g., *Valencia v. Smythe* (2010) 185 Cal.App.4th 153, 173 [110 Cal.Rptr.3d 180].) "Furthermore, the notion of estoppel is familiar to California law, and California's concern for equity is just as strong as that of federal law." (*Rowe v. Exline*, at p. 1288; see also, e.g., *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423] [discussing the "venerable doctrine of equitable estoppel"].) We therefore discern "no reason why California jurisprudence should reject the equitable principle" that prevents "a plaintiff who seeks to hold nonsignatories liable for damages

under a contract" from taking "the inconsistent position that the arbitration provision in the contract is unenforceable by or against those individuals" or entities. (*Rowe v. Exline*, at p. 1288.)

For the doctrine to apply, "the claims the plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." (*Goldman, supra*, 173 Cal.App.4th at pp. 217–218.) "This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Id.* at p. 221.) Application of the doctrine in a proper case is not unfair to signatory plaintiffs resisting arbitration: Not only have such plaintiffs "decided the theories on which to sue" the nonsignatory, they also have "consented to arbitrate the claims against [the signatory defendant] anyway." (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1290.)

"Courts applying equitable estoppel against a signatory have 'looked to the relationships of persons, wrongs and issues, in particular whether the claims that the nonsignatory sought to arbitrate were " ' "intimately founded in and intertwined with the underlying contract obligations." ' " ' " (*Metalclad, supra,* 109 Cal.App.4th at p. 1713.) Application of "the estoppel doctrine in this context does not require a conscious or subjective intent to avoid arbitration, but turns upon the nexus between the contract and the causes of action asserted." (*Rowe v. Exline, supra,* 153 Cal.App.4th at p. 1289.) "The focus is on the nature of the claims asserted by the plaintiff against the nonsignatory defendant." (*Boucher, supra,* 127 Cal.App.4th at p. 272.) "Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." (*Rowe v. Exline,* at p. 1287.)

"Because equitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract the plaintiff has signed with the signatory defendant, we examine the facts alleged in the complaints." (*Goldman, supra,* 173 Cal.App.4th at pp. 229–230.) In this case, then, we consider the allegations supporting plaintiffs' claims against Bio-Rad, both the tort claims (fifth and sixth causes of action) and the contract claims (seventh, eighth, and ninth causes of action).

### a. *Tort claims*

As explained above, "claims framed in tort are subject to contractual arbitration provisions when they arise out of the contractual relationship

between the parties." (*Dryer v. Los Angeles Rams, supra*, 40 Cal.3d at p. 418, fn. 12.) The same principle applies in cases involving nonsignatories: "That the claims are cast in tort rather than contract does not avoid the arbitration clause." (*Boucher, supra*, 127 Cal.App.4th at p. 272.)

*Interference claim*: Here, the fifth cause of action of plaintiff's complaint alleges that Bio-Rad interfered with the License Agreement "by soliciting and facilitating the purported assignment of MAS' technology without MAS' consent." Because it relies on and refers to the License Agreement, that claim is arbitrable. (*Boucher, supra*, 127 Cal.App.4th at p. 272 [compelling arbitration of all claims against nonsignatory, including interference with prospective business advantage]; *Turtle Ridge, supra*, 140 Cal.App.4th at p. 834 [same]; *Vianna, supra*, 27 Cal.App.4th at pp. 1189, 1190 [compelling arbitration of all claims against signatory, including interference with economic advantage and contractual relations]; *Buckhorn, supra*, 121 Cal.App.4th at pp. 1404, 1408 [compelling arbitration of all claims against signatory, including interference with prospective business advantage].)

*Conversion claim*: In its sixth cause of action for conversion, plaintiff alleges its ownership "of the intellectual property described above that is covered under the License Agreement." It further alleges that "Bio-Rad willfully and deliberately converted to its own use and benefit MAS' rights and property without MAS' consent." Patently, this claim is rooted in the License Agreement and intimately intertwined with it. (See *Buckhorn, supra*, 121 Cal.App.4th at p. 1407; *Turtle Ridge, supra*, 140 Cal.App.4th at p. 833.) Plaintiff therefore "cannot avoid the arbitration obligation imposed by" the License Agreement. (*Metalclad, supra*, 109 Cal.App.4th at p. 1718.)

b. *Contract claims*

To an even greater extent than its tort claims, plaintiff's contract claims against Bio-Rad are inseparable from the License Agreement.

*Breach of contract claim*: In the seventh cause of action of the complaint, plaintiff asserts an "alternative" breach of contract claim against Bio-Rad. On information and belief, plaintiff alleges that "Ciphergen and Bio-Rad have contended that Ciphergen was not required to seek MAS' consent to Ciphergen's assignment of the License Agreement to Bio-Rad on the grounds that Bio-Rad succeeded to 'all or substantially all of the business or assets of Ciphergen.' " Plaintiff further alleges: "As a result of the transaction between Ciphergen and Bio-Rad . . . , the License Agreement is a contract between MAS and Bio-Rad" that Bio-Rad breached "by failing to pay MAS royalties based on Adjusted Total Revenue as defined in the License Agreement." This

claim is not merely intertwined with the underlying contract, it expressly derives from it. For that reason, it is arbitrable. (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1287.)

*Accounting claim*: In the eighth cause of action of the complaint, plaintiff asserts an accounting claim against Bio-Rad, using operative language that is identical to plaintiff's accounting claim against Ciphergen. Plaintiff thus alleges: "Under the License Agreement, Bio-Rad has an obligation . . . to provide periodic statements of an account of all revenues generated, and to pay over to MAS a percentage of that revenue." Like plaintiff's parallel cause of action against Ciphergen, this claim against Bio-Rad for "an accounting clearly arises out of and relates to the . . . agreement." (*Larkin, supra*, 76 Cal.App.4th at p. 230.) It is therefore arbitrable.

*Declaratory relief*: The ninth cause of action alleges: "There has arisen a controversy among all the parties as to their respective rights and obligations under the License Agreement." Plaintiff seeks "a ruling as to the legal consequences of the terms of the License Agreement as it affects the parties' actions taken to date and into the future." As with plaintiff's other contract claims, this cause of action for declaratory relief expressly derives from the underlying License Agreement. It is therefore arbitrable. (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1287.)

 To sum up, the doctrine of equitable estoppel applies to all of plaintiff's claims against Bio-Rad, whether framed in tort, contract, or equity. Each is subject to arbitration because it derives from, relies on, or is intimately intertwined with the subject contract containing the arbitration agreement. (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1287; *Boucher, supra*, 127 Cal.App.4th at p. 272; *Metalclad, supra*, 109 Cal.App.4th at p. 1713.)

### 2. *Section 1281.2(c) has no application here.*

As explained above, where the equitable estoppel doctrine applies, the nonsignatory has a right to enforce the arbitration agreement. (*Rowe v. Exline, supra*, 153 Cal.App.4th at p. 1290.) In such cases, the nonsignatory is not a "third party" within the meaning of section 1281.2(c). (*Rowe v. Exline*, at p. 1290.) The provision thus has no application. (*Ibid.*) As just explained, that is the situation here.

In short, Bio-Rad's presence as a party to the litigation provides no basis for avoiding arbitration under section 1281.2.

## DISPOSITION

The order is reversed, and the matter is remanded to the trial court with directions to enter a new and different order granting defendants' motion to compel arbitration.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.