[No. G038591. Fourth Dist., Div. Three. Mar. 20, 2008.]

DARRYL S. BRODKE et al., Plaintiffs and Respondents, v.
ALPHATEC SPINE INC. et al., Defendants and Appellants.

**COUNSEL**

Mintz Levin Cohn Ferris Glovsky and Popeo, Harvey I. Saferstein and Nada I. Shamonki for Defendants and Appellants.

Schnader Harrison Segal & Lewis, Stephen H. Dye, David Smith and Gittel Hilibrand for Plaintiffs and Respondents.

**OPINION**

**IKOLA, J.**—Code of Civil Procedure section 1281.2[1] requires a party moving to compel arbitration to "alleg[e] the existence of a written agreement to arbitrate . . . ." (§ 1281.2.) The question before us is whether a trial court must deny a petition to compel arbitration where the moving party fails to allege the existence of a written agreement containing an arbitration clause. The answer is yes. Our holding is consistent with the plain language of section 1281.2. Accordingly, we affirm the trial court's denial of defendants' petition to compel arbitration.

### FACTS

Plaintiffs Darryl S. Brodke, Alan Hilibrand, Richard Ozuna, and Jeffrey Wang (collectively plaintiffs) are orthopedic surgeons. In March 2006, they sued Alphatec Spine Inc. (Alphatec), and other defendants for, among other

---

[1] All further statutory references are to the Code of Civil Procedure.

things, breach of contract and fraud. In their complaint, plaintiffs allege they entered into four identical written contracts with Alphatec. Pursuant to each contract, entitled "Next Generation Spine System Product Development Agreement," each plaintiff agreed to "make reasonable best efforts in the development of" a "Next Generation Pedicle Screw and Hook System." In return, Alphatec agreed to pay each plaintiff a 1.5 percent royalty on net sales of all new products developed by plaintiffs and Alphatec. Plaintiffs further allege they created a "Next Generation" product, but Alphatec terminated the agreements, filed patent applications for the product they created, and began selling the product without paying them royalties.

Plaintiffs attached the agreement between plaintiff Brodke and Alphatec to the complaint. The agreement contains an arbitration clause, which provides in relevant part, "Any dispute under this Agreement shall be settled by arbitration in Palm Desert, California, unless the parties otherwise agree. Each party shall, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators so named shall select a third arbitrator. . . . The arbitrators shall then hear and determine the question or questions so in dispute. . . . Any award by arbitrators may be entered as judgment in any court of record and any award of arbitrators shall be binding on the parties hereto and not appealable."

Defendants petitioned to compel arbitration, alleging "[g]ood cause exists for granting [the] Petition because the terms of the alleged Agreements that are at the heart of the allegations of this action, and which Plaintiffs affirmatively allege, compel arbitration of any disputes under the Agreements." While it may initially appear that defendants had alleged the existence of an agreement to arbitrate, a closer reading of the petition reveals they had not. Defendants alleged only that *plaintiffs* alleged the existence of "alleged Agreements" to arbitrate; defendants did not themselves affirmatively allege the existence of such agreements. Similarly, the evidence offered by defendants to prove the existence of a written agreement to arbitrate consisted solely of counsel's declaration attaching a copy of plaintiffs' complaint, which in turn attached a copy of the Brodke agreement. In short, defendants did not allege, or attempt to prove, that *defendants* contended an agreement to arbitrate existed—only that *plaintiffs* alleged the existence of an agreement.

The reason for defendants' evasive pleading became clear in their supporting memorandum of points and authorities. There, they "*contest[ed] the*

*existence or validity*" of any written agreements with plaintiffs. Specifically, defendants contended: "Plaintiffs have attached to their Complaint a copy of an alleged Agreement with only one of the four Plaintiffs—Darryl Brodke. Although Defendants have yet to see evidence of the original of this Brodke Agreement, the copy . . . attached to the Complaint appears so far to be a valid copy of an *alleged* Agreement between Brodke and Alphatec. And, of course, *Plaintiffs* have unambiguously alleged that the Brodke Agreement, which includes the mandatory arbitration clause, exists. . . . [¶] However, Defendants have not seen any evidence of identical agreements with the other three Plaintiffs—Wang, Hilibrand and Ozuna. Thus, Defendants will contest the existence of these agreements at arbitration and at any trial or hearing. Plaintiffs admit and allege in their Complaint the existence of identical agreements with these three Plaintiffs. Therefore, for purposes of this Petition only, Defendants rely on Plaintiffs' allegations in their own Complaint." (Italics added.) Later in their supporting memorandum, defendants contended, "As alleged and admitted in . . . the Complaint, . . . all four Plaintiffs entered into four separate but identical . . . Agreements with Defendants for the development of an orthopedic spinal medical device." "Of course, Defendants contest the existence or validity of any such agreements" with plaintiffs.

The court granted defendants' petition to compel arbitration and plaintiffs petitioned for a writ of mandate. After permitting informal briefing, this court issued an alternative writ of mandate directing the court to set aside and vacate its order granting the petition and to enter a new order denying the petition because it failed to comply with section 1281.2. The lower court complied with the writ and issued an order denying defendants' petition to compel arbitration. The minute order stated, "The Petition to Compel arbitration is denied because it fails to satisfy the requirements of . . . section 1281.2 [in] that the Petition must 'allege the existence of a written agreement to arbitrate a controversy.' " This court then discharged the alternative writ and summarily denied the petition as moot. Defendants timely appealed.

## DISCUSSION

The order denying defendants' petition to compel arbitration is appealable pursuant to section 1294, subdivision (a). (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1711 [1 Cal.Rptr.3d 328] (*Metalclad*).) We review the order denying the

petition to compel arbitration de novo because the court did not resolve any factual disputes in rendering its decision. (*Id.* at p. 1716.)

*A Petition to Compel Arbitration Must Affirmatively Allege the Existence of a Written Agreement to Arbitrate*

Section 1281.2 provides in relevant part, "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines" there is a defense to enforcing the agreement. (§ 1281.2, subds. (a)–(c).)

█ It is well settled that "[a] proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341] (*Freeman*).) Therefore, under section 1281.2, "a party to an agreement to arbitrate may not bring an action to compel specific performance of the arbitration provision until he or she can allege . . . the existence of the agreement." (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1041–1042 [9 Cal.Rptr.2d 381, 831 P.2d 821] [deciding when statute of limitations on action to compel arbitration begins to run]; see *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218 [105 Cal.Rptr.2d 597] [a party moving to compel arbitration "must allege the existence of an agreement to arbitrate the controversy"]; 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 496, p. 925 [a petition to compel arbitration must allege, among other things, "that there is a written agreement to arbitrate"].) Here, defendants did not affirmatively allege the existence of a written agreement to arbitrate. They did the opposite. They "contest[ed] the existence or validity of any such agreements" with plaintiffs. Thus, defendants failed to satisfy the most basic statutory prerequisite to granting the petition—to allege the existence of a written agreement to arbitrate.

*Defendants' Arguments Seeking to Excuse Their Pleading Burden Lack Merit*

█ Ignoring the plain language of section 1281.2, defendants raise numerous unmeritorious arguments urging us to reverse the court's denial of

their petition to compel arbitration. First, defendants argue they need not allege the existence of a written agreement to arbitrate because plaintiffs admitted the existence of the agreements in their complaint. This argument misses the point. A contracting party, such as each of the plaintiffs, is free to voluntarily relinquish its contractual right to arbitrate until such time as other parties to the contract, such as defendants, decide *not* to give up that right and seek to enforce the contractual arbitration provision. In seeking enforcement of the contract, defendants have the burden under section 1281.2 to allege the existence of a written agreement to arbitrate. Their petition serves the function of a complaint for specific performance. (*Freeman, supra*, 14 Cal.3d at p. 479.) Absent an allegation of the existence of an agreement to arbitrate, the petition fails to state a cause of action for specific performance. Plaintiffs' opposition to the petition, which points out this defect, is akin to a demurrer to a complaint. As in any action, one does not proceed to proof of the cause until the cause is alleged.

Defendants cannot rely on the allegations in the complaint to meet their pleading burden. While plaintiffs' admissions are an appropriate means by which the existence of an agreement may be *proved*, there is simply no reason to prove anything until the moving party alleges the existence of that which is to be proved. Accordingly, defendants' reliance on *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1272 [127 Cal.Rptr.2d 436], which held that an "admission in a pleading is conclusive on the pleader," is misplaced. (Italics omitted.)

In a variation of that theme, defendants contend the doctrine of equitable estoppel prevents plaintiffs from avoiding the arbitration clause. They rely on *Metalclad, supra*, 109 Cal.App.4th at pages 1713–1714, where this court held the "equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are ' "based on the same facts and are inherently inseparable" ' from arbitrable claims against signatory defendants." (*Id.* at p. 1713.) As the *Metalclad* opinion made clear, however, "neither the *formation* of the . . . contract (or its arbitration clause), nor the *revocability* of either, [was] at issue." (*Id.* at p. 1712.) Thus, *Metalclad* does not stand for the proposition that a party petitioning to enforce an arbitration clause may simultaneously deny the existence of the very contract sought to be enforced. And nothing we said in *Metalclad* purports to excuse the statutory requirement that a party seeking to compel arbitration must affirmatively allege the existence of a written arbitration agreement.

Defendants next protest that if they "concede the existence and validity of the contracts for all purposes in order to compel arbitration" they will be forced to "relinquish[] potentially valid defenses." Their argument is unavailing. Defendants do not identify the defenses they would "relinquish" if they are forced to litigate this dispute in court. All defenses remain available to them, including their claim that the contracts do not exist.

As they did in the court below, defendants cite *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1199 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*) and contend they can move to compel arbitration and, at the same time, deny the existence of the contracts which contain the arbitration clause. Not so. In *St. Agnes*, our high court held an insurance company did not automatically waive its right to arbitrate by filing a lawsuit challenging the *validity* of its contract with a medical center. (*Id.* at pp. 1199–1200.) But in *St. Agnes*, "[n]either party challenge[d] its assent to the [contract] . . . ." (*Id.* at p. 1199.) Indeed, neither party denied "its knowing and voluntary agreement" to the contract "and the terms it contained." (*Id.* at p. 1200.) Rather, the health insurance company asserted the contract was void *ab initio* "due to an event transpiring after its effective date." (*Id.* at p. 1199.) Here—and in contrast to *St. Agnes*—defendants claim there are no written agreements with plaintiffs. The rule in *St. Agnes* applies where a party challenges the *validity* of a contract, not its very existence. It does not apply where, as here, the moving party claims it never entered into a contract. (*Id.* at p. 1200.)

Defendants also contend the denial of their petition to compel arbitration was improper, at least in part, because they did not deny the existence of a written agreement with plaintiff Brodke. This argument fails for two reasons. First, as discussed above, defendants did not affirmatively allege a written agreement with Brodke. Second, defendants' memorandum in support of their petition to compel arbitration demonstrates otherwise. Defendants stated: "As alleged and admitted in . . . the Complaint, . . . all four Plaintiffs entered into four separate but identical . . . agreements with Defendants for the development of an orthopedic spinal medical device." "Of course, Defendants contest the existence or validity of *any* such agreements" with plaintiffs. (Italics added.) Because defendants contested the existence of "any" written agreements with plaintiffs in the court below, they cannot argue otherwise on appeal.

█  At oral argument, defense counsel argued this court cannot affirm the denial of the petition to compel because the trial court did not conduct a "*Rosenthal* hearing" before denying the petition. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) In *Rosenthal*, our high court outlined the "procedures by which

petitions to compel arbitration . . . are to be determined in the superior courts." (*Id.* at p. 402.) The *Rosenthal* court explained, "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable." (*Id.* at p. 413.) When the moving party has alleged the existence of a written agreement to arbitrate and has submitted prima facie evidence of that agreement, the trial court "sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination" on whether the agreement to arbitrate is valid and enforceable. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903]; see also *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761–762 [50 Cal.Rptr.3d 700] [trial court must conduct an evidentiary hearing where a party raises a defense to enforcement of an arbitration agreement; the court cannot rely on allegations in the opposing party's complaint in "declining to find [an] enforceable agreement to arbitrate"].) But as discussed above, defendants have it backward. They are not entitled to proceed with their proof of an agreement without first alleging the existence of an agreement.

■ Finally, defendants correctly note California public policy favors arbitration. Sections 1281 and 1281.2 reflect a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) But there is no public policy in favor of compelling arbitration where the moving party does not satisfy the requirements of section 1281.2. (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800]; *Villacreses v. Molinari* (2005) 132 Cal.App.4th 1223, 1230 [34 Cal.Rptr.3d 281]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2007) ¶ 5:8.1, p. 5-5.) Nor is there a public policy which would compel the enforcement of a contract on behalf of a party who denies the very existence of the contract sought to be enforced. Defendants complain it is unfair for the court to "thwart the system favoring arbitration by over-technical readings of California statutes." There is no "over-technical reading[]" here. Section 1281.2 clearly requires a party moving to compel arbitration to "alleg[e] the existence of a written agreement to arbitrate a controversy." ■ Because defendants have not met their pleading burden under section 1281.2, the court properly denied their petition to compel arbitration.

1578

## DISPOSITION

The order denying defendants' petition to compel arbitration is affirmed. Plaintiffs are awarded their costs on appeal.

O'Leary, Acting P. J., and Moore, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 18, 2008, S163089. George, C. J., Werdegar, J., and Corrigan, J., did not participate therein.