Filed 9/3/13  Ulloa v. JPMorgan Chase Bank CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAUL MUNOZ ULLOA, | |
| Plaintiff and Appellant, | G047232 |
| v. | (Super. Ct. No. 30-2011-00456923) |
| JPMORGAN CHASE BANK, N.A. et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, James Di Cesare, Judge.  Affirmed.

Raul Munoz Ulloa, in pro. per., for Plaintiff and Appellant.

AlvaradoSmith, Theodore E. Bacon and Mikel A. Glavinovich for Defendants and Respondents.

\*          \*          \*

Raul Munoz Ulloa filed this action against various entities associated with a loan he obtained in 2006 to buy a Santa Ana apartment building. All but one of his claims were winnowed out in a sustained demurrer, and the remaining cause of action was then the subject of a successful motion for summary judgment. Ulloa has now appealed from the ensuing judgment. Much of his appeal centers on the legal authority of the trial judge to dismiss his claims prior to a jury trial. As we explain below, the trial judge acted within his legal authority and acted correctly. We affirm.

FACTS

In April 2006, Ulloa purchased an apartment building on Broadway in Santa Ana, borrowing $640,000 from Alliance Bancorp. Thereafter the loan was transferred to JP Morgan Chase Bank (hereafter, Chase). Sometime prior to December 2008 Ulloa stopped making regular payments, and a foreclosure sale was set for March 16, 2011. Ulloa was unable to obtain a loan modification, but five days before the scheduled sale, on March 11, 2011, he filed this action against Chase and a group of other entities related to the servicing of his mortgage. Ulloa obtained a temporary restraining order, but the restraining order was dissolved when the trial court denied his request for a preliminary injunction on July 1. According to respondent's brief, the property remains unsold to this day.

Ulloa's complaint alleged these causes of action: (1) intentional fraud; (2) violation of section 2923.5 of the Civil Code; (3) declaratory relief; (4) intentional infliction of emotional distress; (5) promissory note; and (6) unfair competition. Chase and the other defendants demurred to all these causes of action. The trial court sustained the demurrer to all the causes of action except the one for violation of Civil Code section 2923.5. A summary judgment motion followed. The motion was supported by the declaration of Carlos Barrios, a senior loan research specialist at Chase. Barrios' declaration recounted that Chase's business records showed that in the period October through November 2008, Ulloa applied for a loan modification, and representatives of

2

Chase (then WaMu) discussed alternatives to foreclosure with him. The summary judgment motion was granted, disposing of Ulloa's remaining cause of action. Judgment was entered in June 2012, and this appeal timely followed.

DISCUSSION

Ulloa's main argument in this appeal is that the trial judge, the Honorable James Di Cesare, somehow overstepped his proper authority in his various rulings against Ulloa, because Judge Di Cesare is a mere "magistrate" and therefore somehow was not acting on behalf of a "court of record." Suffice to say, Judge Di Cesare is most assuredly a judge of the Orange County Superior Court, and his court is indeed one of "record." (See, e.g., *Bell v. Feibush* (2013) 212 Cal.App.4th 1041; *State of California ex rel. Dockstader v. Hamby* (2008) 162 Cal.App.4th 480; *Brodke v. Alphatec Spine Inc.* (2008) 160 Cal.App.4th 1569; cf. Cal. Const., art. VI, § 1 ["The judicial power of this State is vested in the Supreme Court, courts of appeal, and *superior courts*, all of which are courts of record." (Italics added.)].)

It is possible that Ulloa, proceeding in propria persona, is confused about the word "magistrate." In the federal courts, the word "magistrate" can suggest a subordinate judicial officer analogous to a commissioner in state courts. (See Baker, *The Expanding Power of Magistrate Judges in Federal Courts* (2005) 39 Val. U.L. Rev. 661, 664.) In California law, the word "magistrate" is a legal term of art referring to *all* judges – including the members of this court, the superior courts (including Judge Di Cesare) and even of California's Supreme Court – in the exercise of their power to issue arrest warrants in criminal cases. (Pen. Code, §§ 807, 808.) But, as Ulloa must acknowledge, his lawsuit is not a criminal case. Judge Di Cesare might function as a "magistrate" in the event he had to issue an arrest warrant, but he was certainly functioning as a judge when he ruled on Chase's demurrer and summary judgment motion.

Turning to the substance of Judge Di Cesare's rulings, Ulloa seems to assume that a series of documents he sent to Chase and other entities[1] in January 2011 constituted a "qualified written request" under a federal law known as "RESPA" (the Real Estate Settlement and Procedures Act (12 U.S.C. §§ 2601, et seq.) and somehow bound Chase to various facts and assertions unilaterally stated in them, because Chase did not respond to his documents within 20 days.[2]

As it happens, though, this court very recently addressed the ramifications of qualified written requests in *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497. As Presiding Justice O'Leary explains in *Jenkins*, there are no cognizable claims under RESPA unless a plaintiff pleads facts showing the suffering of actual "pecuniary damages" because of a failure to respond. (*Id.* at pp. 531-532.) Moreover, any harm must come from the violation of RESPA *itself*, as distinct from the default on a loan and subsequent foreclosure. (*Id.* at p. 532.) From these rules it follows that the absence of a response from Chase to Ulloa's documents within a certain amount of time in no way created a series of facts binding on Chase in this litigation. Most tellingly, we note that Ulloa makes no attempt to allege that he has kept up the payments on his mortgage and thus has a right to keep the property. In fact, in his own separate statement of undisputed facts submitted in opposition to Chase's summary judgment motion, Ulloa admitted it was undisputed that he has not been able to make the payments.

Rather, Ulloa seems to be arguing that his property is immune to foreclosure on the theory that Chase has not "established" that it now actually owns the loan. But his own statement in his complaint refutes that. (From paragraphs 20 and 22:

---

[1] Including Orange County Sheriff Sandra Hutchens.

[2] At a trial setting conference held in September 2011, Judge Di Cesare noted specifically Ulloa's tendency to file unilateral statements purporting to have some dispositive legal effect when they actually have no effect at all. Said Judge Di Cesare, commenting on a court order which Ulloa had signed himself: "But you bring an interpreter here, a Spanish speaker, this document is in English, and it purports to say 'the court,' and you're signing it. And I'm the court. This purports to say that you're the court. But then it says, 'attornatus privates.' So it's not having the legal effect that you think. So if you think you are having some legal effect by filing these, it's not having that effect. So you might want to talk to somebody."

"Raul [Ulloa] acquired a loan with Alliance Bancorp on June 1, 2006 for the amount of $640,000 . . . . Loan was transferred to JP formally [sic: should be formerly] known as, Washington Mutual.")

And if that's not enough, sufficient evidence was provided in Chase's motion for summary judgment. In that motion Chase submitted a request for judicial notice of various records recorded in the Orange County Recorder's office. Those records show a deed of trust from Ulloa recorded June 1, 2006 to Lawyer's Title Company as trustee, with Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for lender Alliance, and Alliance's successors and assigns. The next document is an assignment, recorded December 24, 2008, of Ulloa's deed of trust from MERS to La Salle Bank, itself the trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR06 Trust. In conjunction with these documents, Chase submitted the declaration of Carlos Barrios, one of its senior loan research specialists, which recounted Chase's business records showing Chase acquired assets of Washington Mutual (WaMu) when WaMu failed, and in September 2008 Chase became the servicer of Ulloa's loan.

In short, while Chase's authority to foreclose on Ulloa's unpaid loan is the final product of a complex series of transfers, there is no basis on which to conclude that authority does not exist. And since Chase is the servicer of Ulloa's loan, there can be no question it has legal standing to initiate nonjudicial foreclosure proceedings. (See *Jenkins, supra*, 216 Cal.App.4th at pp. 515-516.)

Ulloa also disputes the propriety of the summary judgment motion, focusing on Barrios' lack of personal knowledge, i.e., that his declaration is technically hearsay. Proceeding as his own attorney, perhaps Ulloa is unaware of the business records exception to the hearsay rule set out in section 1271 of the Evidence Code. The basic reason for the business records exception to the hearsay rule is to avoid the time-consuming business of requiring every single individual in an organization who might

5

have handled a given transaction to come to court and give oral testimony. (*Nichols v. McCoy* (1952) 38 Cal.2d 447, 449-450 ["'It is the object of the business records statutes to eliminate the necessity of calling each witness, and to substitute the record of the transaction or event.' . . . . Accordingly, it was unnecessary to call the witness who supplied the embalmer with the information he recorded."].) Barrios' declaration readily passes the requirements for the business records exception. The documents showing Chase ultimately acquired Ulloa's loan were all made in the regular course of a business at the time of the transfer. Barrios is certainly qualified to testify to them – researching loan documents is his full-time job. And records showing what banks do and do not own are archetypically trustworthy, because they constitute some of the very assets which allow the banks to continue to do business.[3]

As to the merits of the summary judgment motion, Barrios' declaration recounted how Chase's business records showed that in October 2008 representatives of Chase discussed foreclosure alternatives with Ulloa over the telephone and provided Ulloa with WaMu and Department of Housing and Urban Development contact numbers. Additionally, Chase took a loan modification application from Ulloa in September 2008, though it was rejected in November 2008. This was more than enough to satisfy section 2923.5. (See *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 232 [to avoid federal preemption, requirements under section 2923.5 "must necessarily be simple" and do not require a lender "to become a loan counselor" itself].) Ulloa submitted nothing to

---

[3] Ulloa does not challenge the validity of the trial court's sustaining a demurrer to all but one of the various causes of action listed in his complaint in anything approaching a seriatim basis under discrete headings in his brief. (Cal. Rules of Court, rule 8.204 ["Each brief must: ... [¶] State each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].) So any arguments, arguably made in passing about those causes of action, are waived. (See, e.g., *Conservatorship of Hume* (2006) 139 Cal.App.4th 393, 395, fn. 2.) That said, Judge Di Cesare perceptively noted in his minute order on JP Morgan's demurrer that the closest allegation to fraud that Ulloa appears to have made in his complaint was that his initial lender never disclosed any intent to sell his loan to other entities. But that of course is not fraud or breach of contract, because there is nothing in his complaint demonstrating that Alliance Bancorp ever promised it *wouldn't* sell its loan to other entities.

controvert Barrios' declaration and create a triable issue of fact on the question of whether he really was so contacted, so the grant of summary judgment was correct.

DISPOSITION

The judgment is affirmed.  Chase is to recover its costs on appeal.



BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.

7