Filed 6/25/15  Tong v. Orange Coast Mem. Med. Center CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JONATHAN TONG et al., | |
| Plaintiffs and Respondents, | G050038 |
| v. | (Super. Ct. No. 30-2012-00542508) |
| ORANGE COAST MEMORIAL MEDICAL CENTER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Elizabeth K. Eagleson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Foley & Lardner, Tami S. Smason and Sonia Salinas for Defendant and Appellant.

Younesi & Yoss, John D. Younesi and Jan A. Yoss for Plaintiffs and Respondents.

\*          \*          \*

Plaintiffs and respondents Jonathan Tong, Wynnson Tom, Thomas Nguyen, and James Chang (collectively, Plaintiffs) sued defendant and appellant Orange Coast Memorial Medical Center (Orange Coast) as third party beneficiaries under a contract Orange Coast entered into with another party. Orange Coast moved to compel Plaintiffs to arbitrate their breach of contract claim, arguing Plaintiffs are bound by the arbitration provision in Orange Coast's contract with the other party "to the extent that Plaintiffs claim to be third party beneficiaries to this contract." Orange Coast, however, denied Plaintiffs were third party beneficiaries under the contract or that it had any contractual relationship with Plaintiffs. Based on our decision in *Brodke v. Alphatec Spine, Inc.* (2008) 160 Cal.App.4th 1569 (*Brodke*), the trial court denied the motion because Orange Coast failed to affirmatively allege an arbitration agreement existed between it and Plaintiffs.

In *Brodke*, this court concluded Code of Civil Procedure section 1281.2's plain language requires a party moving to compel arbitration to affirmatively allege an agreement to arbitrate exists between the parties.[1] We explained a defendant moving to compel arbitration cannot meet this burden by simply arguing the plaintiff either admitted an arbitration agreement existed or cannot deny its existence because the plaintiff's claims are based on a contract that included an arbitration provision. Arbitration is a matter of contract and a motion to compel arbitration essentially is an action in equity to specifically enforce an arbitration agreement. Accordingly, a party cannot specifically enforce an arbitration agreement and simultaneously deny it has any contractual relationship with the party it seeks to compel into arbitration.

We also reject Orange Coast's contention Plaintiffs agreed to arbitration by signing a separate contract with another party that incorporates the contract containing the arbitration provision on which Orange Coast relied in making its motion.

___

[1] All statutory references are to the Code of Civil Procedure.

2

Incorporating a provision from another contract requires a clear and unequivocal reference to that contractual provision. The contract Plaintiffs signed, however, ambiguously states it incorporates "pertinent portions" of Orange Coast's contract without referring to arbitration or specifying which portions it incorporated. That is insufficient. We therefore affirm the trial court's decision to deny arbitration.

I

FACTS AND PROCEDURAL HISTORY

Orange Coast is a general acute care hospital located in Fountain Valley, California. In 2000, Magdi Sidhom, M.D., and Orange Coast entered into the "Exclusive Professional Services Agreement" (Exclusive Services Agreement), making Sidhom the exclusive provider of anesthesiology services at the hospital. The Exclusive Services Agreement authorized Sidhom to hire other anesthesiologists to work at Orange Coast, but required those anesthesiologists to contract with Sidhom. Under the Exclusive Services Agreement, Sidhom controlled all scheduling, billing, and other administrative matters concerning anesthesiology services at Orange Coast. The Exclusive Services Agreement also included an arbitration provision stating, "Any Controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by a single arbitrator in arbitration at Los Angeles, California, administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction thereof. . . ."

Plaintiffs each entered into a separate "Anesthesiology Services Agreement" (Anesthesiology Agreement) with Sidhom to become a staff member eligible to provide anesthesiology services at Orange Coast. Under the Anesthesiology Agreement, each Plaintiff agreed to provide services as an independent contractor and accept payment from Sidhom based on a "pooled income methodology." The

3

Anesthesiology Agreement repeatedly referred to the Exclusive Services Agreement and incorporated by reference the "pertinent portions" that were purportedly attached as Exhibit "A," but no portions of the Exclusive Services Agreement are attached to the copies of the Anesthesiology Agreement included in the record and nothing purports to identify which portions of the Exclusive Services Agreement were to be attached. The Anesthesiology Agreement did not include an arbitration provision.

In 2011, Plaintiffs and others noticed irregularities in the compensation they received from Sidhom. When Plaintiffs confronted Sidhom, he allegedly acknowledged he had been taking more than he was entitled from the pool of funds he received for Plaintiffs' services. In response, Plaintiffs negotiated with Sidhom and Orange Coast for repayment of the funds, and for a new compensation structure. When these negotiations were unsuccessful, Sidhom and Orange Coast either terminated Plaintiffs' rights to provide anesthesiology services at Orange Coast or forced them to relinquish those rights.

In February 2012, Plaintiffs filed this action against Sidhom, Orange Coast, Orange Coast's chief executive officer, and others alleging a conspiracy to steal money from Plaintiffs and the other anesthesiologists who worked at Orange Coast. After several rounds of demurrers and summary adjudication motions, the trial court granted Plaintiffs leave to file a fifth amended complaint to add a breach of contract claim against Orange Coast. In that claim, Plaintiffs alleged they were third party beneficiaries under the Exclusive Services Agreement and Orange Coast was a "third party obligor" under the Anesthesiology Agreement. According to Plaintiffs, Orange Coast breached both agreements by terminating their rights to work at Orange Coast without cause and in retaliation for Plaintiffs complaining about Sidhom's thefts. Plaintiffs seek to recover the compensation they would have received if they continued to work at Orange Coast and

4

their attorney fees based on the attorney fee clauses in the Exclusive Services Agreement and the Anesthesiology Agreement.[2]

Orange Coast moved to compel Plaintiffs to arbitrate their new breach of contract cause of action based on the Exclusive Services Agreement's arbitration provision. In making the motion, Orange Coast denied Plaintiffs were third party beneficiaries under the Exclusive Services Agreement and that it was a third party obligor under the Anesthesiology Agreement. Nonetheless, Orange Coast argued Plaintiffs must arbitrate their breach of contract claim because they based their claim on the Exclusive Services Agreement, and therefore equitable estoppel prevented them from refusing to arbitrate under that agreement's arbitration provision.

The trial court denied the motion on two grounds. First, because Orange Coast denied it had a contractual relationship with Plaintiffs and that Plaintiffs were third party beneficiaries under the Exclusive Services Agreement, Orange Coast failed to allege an arbitration agreement existed between Plaintiffs and Orange Coast. Second, the court found ordering Plaintiffs to arbitrate their breach of contract claim may lead to conflicting rulings on legal or factual issues common to the claims against the other defendants.[3] (See § 1281.2, subd. (c).) Orange Coast timely appealed.

---

[2] Plaintiffs remaining causes of action against Orange Coast and the other defendants are not at issue on this appeal.

[3] We do not address whether the trial court properly denied the motion to compel arbitration on this second ground because our conclusion Orange Coast failed to affirmatively allege an arbitration agreement between it and Plaintiffs renders this issue moot.

5

II

DISCUSSION

A.      *Basic Legal Principles on Compelling Arbitration*

California has a strong public policy favoring arbitration as a speedy and relatively inexpensive means of dispute resolution.  Arbitration, however, is a matter of contract.  (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 (*Avery*).)  "The "'''. . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.'"  [Citation.]  "Although '[t]he law favors contracts for arbitration of disputes between parties' [citation], '"there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate. . . ."' [Citations.]"'  [Citation.]  'Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived.'"'"  (*Ibid*., original italics.)

Section 1281.2 therefore requires a trial court to grant a motion to compel arbitration "if [the court] determines that an agreement to arbitrate the controversy exists."  (§ 1281.2.)  The party seeking to compel arbitration has the initial burden to allege and prove the existence of a valid, written arbitration agreement that applies to the dispute.  Once that burden is satisfied, the party opposing arbitration must prove by a preponderance of the evidence any defense to the arbitration agreement's enforcement.  (*Ibid*.; *Avery*, *supra*, 218 Cal.App.4th at p. 59; *Brodke*, *supra*, 160 Cal.App.4th at p. 1574.)

"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.  [Citations.]'  [Citation]"  (*Avery*, *supra*, 218 Cal.App.4th at p. 60.)  Here,

6

there are no disputed factual issues, and therefore we review the trial court's ruling de novo. (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1715-1716 (*Metalclad*).)

B.      *Orange Coast Failed to Affirmatively Allege an Arbitration Agreement Existed With Plaintiffs*

Orange Coast contends the trial court erred by concluding Orange Coast failed to meet its burden to allege the existence of an arbitration agreement. According to Orange Coast, it satisfied its burden by alleging Plaintiffs based their breach of contract claim on the Exclusive Services Agreement and that agreement included an arbitration provision. We disagree because Orange Coast misconstrues its burden as the party moving to compel arbitration.

In *Brodke*, this court examined section 1281.2's requirement that a party allege and prove the existence of a valid arbitration agreement before it may compel arbitration. There, four plaintiffs sued a medical device manufacturer to recover royalties under a product development agreement, and the manufacturer moved to compel arbitration based on an arbitration provision in the agreement. In doing so, the manufacturer expressly "'contest[ed] the existence or validity'" of any written agreement with the plaintiffs, but nonetheless argued the plaintiffs must arbitrate their claims because the plaintiffs based their claims on an agreement that included an arbitration provision. (*Brodke*, *supra*, 160 Cal.App.4th at pp. 1572-1573, italics omitted.) The trial court denied the motion because the manufacturer failed to "'"allege the existence of a written agreement to arbitrate a controversy"'" as required by section 1281.2.[4] (*Brodke*, at p. 1573.)

---

[4]      Section 1281.2 provides, "On petition of a party to an arbitration agreement *alleging the existence of a written agreement to arbitrate a controversy* and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the

The *Brodke* court affirmed, concluding a party could not simultaneously seek to enforce a contract's arbitration provision and deny that contract's existence. (*Brodke*, *supra*, 160 Cal.App.4th at pp. 1571, 1575.)  As we explained, section 1281.2's plain language requires a party moving to compel arbitration to affirmatively "'allege[] the existence of a written agreement to arbitrate'" because a motion to compel arbitration is "'is in essence a suit in equity to compel specific performance of a contract.'"  (*Brodke*, at pp. 1571, 1574.)  The motion therefore serves the function of a complaint for specific performance, and the moving party fails to state a cause of action unless it alleges the existence of an agreement to arbitrate.  (*Id*. at p. 1575.)  By contesting "'the existence or validity'" of any written agreement with the plaintiffs, the manufacturer "failed to satisfy the most basic statutory prerequisite to granting the [motion to compel arbitration]—to allege the existence of a written agreement to arbitrate."  (*Id*. at p. 1574.)

In reaching this conclusion, we rejected the manufacturer's contention it was not required to allege the existence of a written arbitration agreement because the allegations of the plaintiffs' complaint admitted the agreement existed.  We explained the allegations in one party's pleading cannot satisfy the burden of another party to allege every element of its claim.  Moreover, although the "plaintiffs' admissions [in their complaint] are an appropriate means by which the existence of an agreement may be *proved*, there is simply no reason to prove anything until the moving party alleges the existence of that which is to be proved."  (*Brodke*, *supra*, 160 Cal.App.4th at p. 1575.)  Indeed, regardless of the basis for a plaintiff's claims, a motion to compel arbitration must be denied if the moving party fails to affirmatively allege an arbitration agreement exists between the plaintiff and the defendant.  (*Id*. at p. 1571.)

controversy exists, unless it determines [a defense to enforcement exists]."  (Italics added.)

8

Here, Orange Coast failed to satisfy this "most basic statutory prerequisite to granting [a motion to compel arbitration]." (*Brodke*, *supra*, 160 Cal.App.4th at p. 1574.) Orange Coast alleged that the Exclusive Services Agreement between it and Sidhom included an arbitration provision. But Orange Coast also alleged Plaintiffs are not parties to the Exclusive Services Agreement and are not third party beneficiaries entitled to any benefits under that agreement. Thus, Orange Coast alleged an arbitration agreement existed, but not between it and Plaintiffs. Like the manufacturer in *Brodke*, Orange Coast sought to satisfy its burden by pointing to the allegations Plaintiffs made in their breach of contract claim and alleging "to the extent that Plaintiffs claim to be third party beneficiaries to [the Exclusive Services Agreement], they must be similarly bound by the contract's arbitration provision." Reliance on Plaintiffs' allegations, however, fails to satisfy Orange Coast's burden to affirmatively allege it had an arbitration agreement with Plaintiffs. Simply put, by denying the existence of any contractual relationship with Plaintiffs, Orange Coast cannot satisfy its burden.

Orange Coast emphasizes the moving party in *Brodke* claimed the agreement that included the arbitration provision was invalid, but here Orange Coast does not contest the validity of the Exclusive Services Agreement and its arbitration provision. This argument misconstrues *Brodke* and the burden section 1281.2 imposes on the moving party to allege the existence of an agreement to arbitrate. To meet its burden, Orange Coast must allege the existence of an arbitration agreement *between the parties* subject to the arbitration provision. As explained above, arbitration is a matter of contract (*Avery*, *supra*, 218 Cal.App.4th at p. 59), and therefore a party cannot be sent to arbitration unless there is an arbitration agreement between that party and the party seeking to compel arbitration. Although Orange Coast alleged an arbitration agreement existed, it also alleged Plaintiffs are not parties to that agreement and are not third party beneficiaries under it.

9

Contrary to Orange Coast's contention, our interpretation of *Brodke* does not require a party to "concede that an arbitrable claim is meritorious in order to succeed in a motion to compel arbitration." A defendant seeking to compel arbitration remains free to deny liability by arguing it did not breach the contract, it did not cause the plaintiff's damages, the plaintiff did not suffer any damages, and any other applicable defense. The only contention the defendant cannot make is that no contractual relationship exists between the parties because that contention prevents the defendant from satisfying its burden under section 1281.2 to affirmatively allege an arbitration agreement existed between the defendant and the plaintiff.

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696 (*Molecular Analytical*), illustrates this distinction. There, the plaintiff sued two defendants based on a licensing agreement it entered into with one defendant, who then assigned the agreement to the second defendant. Both defendants moved to compel arbitration based on an arbitration provision in the licensing agreement. (*Id*. at pp. 701-702.) Citing *Brodke*, the plaintiff opposed the motion by arguing the defendants failed to meet their burden to allege and prove the existence of an arbitration agreement because the defendants denied all of the plaintiff's claims. (*Molecular Analytical*, at p. 709.) The *Molecular Analytical* court rejected this argument, explaining the defendants in its case did not dispute the existence of the licensing agreement in moving to compel arbitration. (*Id*. at p. 710.) Because the *Molecular Analytical* defendants simply denied they were liable to the plaintiff, the court concluded the facts in its case were "entirely dissimilar" to those in *Brodke*. (*Molecular Analytical*, at p. 710.)

Moreover, *Brodke* points out that requiring a party moving to compel arbitration to affirmatively allege the existence of an agreement to arbitrate does not require that party to surrender any defense it may have to the underlying action. (*Brodke*, *supra*, 160 Cal.App.4th at p. 1576.) Indeed, section 1281.2's pleading requirement does not prevent a party from challenging the existence of a contractual relationship; it merely

requires the party to do so in court because denying the existence of a contractual relationship is inconsistent with arbitration's contractual nature.

C. *Equitable Estoppel Did Not Relieve Orange Coast of Its Burden to Affirmatively Allege the Existence of an Arbitration Agreement*

Orange Coast contends the trial court erroneously denied the motion to compel arbitration because Plaintiffs based their breach of contract claim on a contract containing an arbitration provision—the Exclusive Services Agreement—and therefore Plaintiffs were equitably estopped from refusing to arbitrate that claim. We disagree. Although the equitable estoppel doctrine generally may be applied to enforce arbitration agreements against nonsignatories, it does not excuse Orange Coast from its statutory burden to affirmatively allege an arbitration agreement existed between it and Plaintiffs.

When it applies, the equitable estoppel doctrine provides an exception to the general rule that "'one must be a party to an arbitration agreement to be bound by it or invoke it.'" (*Molecular Analytical*, *supra*, 186 Cal.App.4th at p. 706.) Under this doctrine, "a nonsignatory 'is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause.'" (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1070.) "'The fundamental point . . . is that [a party is] not entitled to make use of the [contract containing an arbitration clause] as long as it worked to her advantage, then attempt to avoid its application in defining the forum in which her dispute . . . should be resolved.' [Citation.] The doctrine thus prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage." (*Metalclad Corp.*, *supra*, 109 Cal.App.4th at p. 1714.)

Orange Coast cites several cases acknowledging equitable estoppel may allow a nonsignatory defendant to enforce an arbitration agreement against a signatory plaintiff, and a signatory defendant to enforce an arbitration agreement against a nonsignatory plaintiff. (See, e.g., *JSM Tuscany, LLC v. Superior Court* (2011)

11

193 Cal.App.4th 1222, 1236-1241 [acknowledging potential application of equitable estoppel, but remanding because appellate record lacked sufficient evidence to show equitable estoppel applied]; *Molecular Analytical*, *supra*, 186 Cal.App.4th at pp. 714-717 [allowing nonsignatories to enforce arbitration agreement based on equitable estoppel]; *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220-221, 229-234 [acknowledging equitable estoppel may be relied upon to enforce arbitration agreement against nonsignatory, but declining to do so on facts of case]; *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1286-1290 [allowing nonsignatories to enforce arbitration agreement based on equitable estoppel].)

None of these cases, however, addressed section 1281.2's requirement that the party moving to compel arbitration must affirmatively allege the existence of an arbitration agreement that applies to the parties. More importantly, none of these cases involved a moving party who sought to compel arbitration despite denying the party allegedly subject to arbitration had any contractual relationship with the moving party.

In contrast, *Brodke* addressed both section 1281.2's pleading requirement and equitable estoppel. As explained above, the *Brodke* defendant moved to compel arbitration while simultaneously denying it had any contractual relationship with the plaintiffs. (*Brodke*, *supra*, 160 Cal.App.4th at pp. 1572-1573.) The defendant argued it did not have to allege the existence of an arbitration agreement between the parties because the plaintiffs based all their claims on a contract that included an arbitration clause, and therefore the plaintiffs were equitably estopped from avoiding arbitration. The trial court denied the motion and this court affirmed because section 1281.2's requirement to affirmatively allege the existence of an arbitration agreement between the parties is a pleading burden the moving party must satisfy to put the motion to compel arbitration at issue. Without an affirmative allegation that an arbitration agreement exists between the parties, the court never reaches the question whether the opposing party either has admitted the agreement's existence or is equitably estopped from denying its

12

existence. As the *Brodke* court explained, nothing in the cases relying on equitable estoppel to enforce an arbitration agreement allows "a party petitioning to enforce an arbitration clause [to] simultaneously deny the existence of the very contract sought to be enforced," or "excuse[s] the statutory requirement that a party seeking to compel arbitration must affirmatively allege the existence of a written arbitration agreement." (*Brodke*, at p. 1575.)

We follow *Brodke* and conclude Orange Coast may not rely on equitable estoppel to excuse its failure to affirmatively allege the existence of an agreement to arbitrate between it and Plaintiffs. By definition, equitable estoppel is an equitable doctrine with fairness as its linchpin. Orange Coast fails to explain how equity or fairness requires the trial court to enforce the arbitration provision in the Exclusive Services Agreement against Plaintiffs when Orange Coast alleges Plaintiffs are neither parties to that agreement nor third party beneficiaries with any rights under it. (See *City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1370 [declining to apply equitable estoppel to allow nonsignatory to enforce arbitration agreement because moving party failed to explain how fairness required enforcement of the agreement].)

D.   *Plaintiffs Did Not Agree to Arbitration by Entering Into the Anesthesiology Agreement*

Regardless whether it may directly enforce the Exclusive Services Agreement's arbitration clause against Plaintiffs, Orange Coast contends the trial court erred in denying the motion to compel arbitration because Plaintiffs concede they signed the Anesthesiology Agreement, and that agreement repeatedly refers to and incorporates by reference the Exclusive Services Agreement and its arbitration clause. According to Orange Coast, Plaintiffs therefore agreed to arbitrate their claims by signing the Anesthesiology Agreement. We disagree.

"[A]n agreement need not *expressly* provide for arbitration, but may do so in a secondary document which is incorporated by reference . . . ." (*Chan v. Drexel*

13

*Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 639 (*Chan*).) "'"But each case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties."'" (*Id*. at p. 641, italics omitted; see *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1331; *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 895.)

In *Chan*, the defendant was a securities brokerage firm that employed the plaintiff as a stockbroker. During her employment, the plaintiff signed a uniform application to register with the National Association of Securities Dealers, the American Stock Exchange, and the New York Stock Exchange (NYSE). The application stated the plaintiff "'agree[d] to abide by the Statute(s), Constitution(s), Rule(s) and By-Laws . . . of the agency jurisdiction or organization with or to which [she submitted the application].'" (*Chan*, *supra*, 178 Cal.App.3d at p. 636.) The NYSE's rules required registered stockbrokers to arbitrate any controversy arising out of their employment with a NYSE member. (*Ibid*.) When the plaintiff later sued for wrongful termination, the defendant moved to compel arbitration based on the NYSE's arbitration rule. The trial court denied the motion, rejecting the defendant's argument the application the plaintiff signed incorporated the NYSE's arbitration rule. (*Id*. at pp. 636-637.)

The Court of Appeal affirmed, explaining "'the right to select a judicial forum, vis-à-vis arbitration, is a "'substantial right,'" not lightly to be deemed waived.'" (*Chan*, *supra*, 178 Cal.App.3d at p. 643.) The *Chan* court found the vague reference to "'the Statute(s), Constitution(s), Rule(s) and By-Laws'" of any organization to which the application was submitted did not incorporate the NYSE's arbitration rule into the application because the reference "failed to *clearly* and *unequivocally* refer to the

14

incorporated document [that included the arbitration provision]" and nowhere mentioned arbitration. (*Id*. at p. 643.)

Here, the Anesthesiology Agreement does not bind Plaintiffs to the Exclusive Services Agreement's arbitration clause because the Anesthesiology Agreement fails to clearly and unequivocally incorporate either the entire Exclusive Services Agreement or its arbitration clause. The Anesthesiology Agreement refers to the Exclusive Services Agreement six times, repeatedly acknowledging that Sidhom entered into the Exclusive Services Agreement to provide anesthesiology services at Orange Coast, that Plaintiffs "desire[]" to become members of the anesthesiology department at Orange Coast under the Exclusive Services Agreement, and that Plaintiffs must comply with the terms and conditions of the Exclusive Services Agreement.[5] The Anesthesiology Agreement, however, includes only one reference that purports to incorporate the Exclusive Services Agreement, but that reference does not incorporate the entire Exclusive Services Agreement. Instead, the reference incorporates only the "pertinent portions" attached to the Anesthesiology Agreement. Unfortunately for

---

[5]    The following are the six references to the Exclusive Services Agreement in the Anesthesiology Agreement:  (1) "WHEREAS, [Sidhom] has entered into an Anesthesia Agreement with [Orange Coast], a true and correct copy of pertinent portions of which is attached hereto and incorporated by reference as Exhibit 'A'";
(2) "WHEREAS, [Plaintiffs] desire[] to be . . . staff member[s] of the Anesthesia Department of [Orange Coast], under [Sidhom's] agreement with [Orange Coast]";
(3) "Such services include, but are not limited to, all of the services and activities which [Sidhom] is required to perform under the terms of the Anesthesia Agreements, Exhibit 'A' hereto"; (4) "[Plaintiffs] agree[] to act at all times in the manner which conforms to and is consistent with the spirit, terms and conditions of this Agreement and the Anesthesia Agreement between [Sidhom] and [Orange Coast], Exhibit 'A' hereto";
(5) "This Agreement may be immediately terminated by either [Sidhom] or by [Plaintiffs] for cause, which includes, without limitation, [Plaintiffs'] breach of [their] duties under Exhibit 'A'"; and (6) "[Plaintiffs], at all times, shall fully comply with the requirements imposed upon anesthesiologists by [Sidhom's] Anesthesia Agreement with [Orange Coast], Exhibit 'A' hereto, as amended and/or supplemented from time to time in the future."

15

Orange Coast, the copy of the Anesthesiology Agreement included in the record does not attach any portions of the Exclusive Services Agreement and Orange Coast does not identify which portions were purportedly attached. The other references to the Exclusive Services Agreement are not sufficient to incorporate the arbitration provision because they only generally refer to the standards for performing under the Exclusive Services Agreement without referring to arbitration or any other form of dispute resolution. Accordingly, although the Anesthesiology Agreement could have incorporated the Exclusive Services Agreement's arbitration clause, it failed to adequately do so and Plaintiffs therefore are not bound by it.[6]

III

DISPOSITION

The order is affirmed. Plaintiffs shall recover their costs on appeal.

ARONSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

THOMPSON, J.

---

[6] Because the Anesthesiology Agreement does not adequately incorporate the Exclusive Services Agreement's arbitration clause, we need not decide whether that clause, if adequately incorporated, would require Plaintiffs to arbitrate claims against Sidhom only or both Sidhom and Orange Coast.